AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

IN THE MATTER OF THE USE OF A CELL-SITE SIMULATOR TO LOCATE THE T-MOBILE CELLULAR DEVICE ASSIGNED CALL NUMBER 614-957-9388, WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTITY NUMBER 310 260 061 715 997 ) ) ) ) ) )

Case No. 2:20-mj-402

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property (identify the person or describe the property to be searched and give its location):

See Attachment A

located in the Southern District of Ohio, there is now concealed (identify the person or describe the property to be seized):

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is (check one or more):
- ☒ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21, USC Sections 841(a)(1) and 846 | Distribution and possession with intent to distribute controlled substances and conspiracy to do the same |

The application is based on these facts:

See Attached Affidavit

☒ Continued on the attached sheet.

☒ Delayed notice of 30 days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Sheila G. Lafferty, Assistant U.S. Attorney
*Printed name and title*

Sworn to before me and signed in my presence.

Date: June 4, 2020

City and state: Columbus, Ohio

Kimberly A. Jolson
United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE USE OF A CELL-SITE SIMULATOR TO LOCATE THE T-MOBILE CELLULAR DEVICE ASSIGNED CALL NUMBER 614-957-9388, WITH INTERNATIONAL MOBILE SUBSCRIBER IDENTITY NUMBER 310 260 061 715 997 | Case No. 2:20-mj-402<br><br>Filed Under Seal |

### AFFIDAVIT IN SUPPORT OF
### AN APPLICATION FOR A SEARCH WARRANT

I, Zachary R. Bennett, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique, which is described in Attachment B, to determine the location of the cellular device assigned call number **614-957-9388** with International Mobile Subscriber Identity (IMSI) Number **310 260 061 715 997** (the "**Target Cellular Device**"), which is described in Attachment A.

2. I am a Special Agent with the Drug Enforcement Administration (DEA) and have been so employed since 2018. I graduated from the DEA Academy located in Quantico, Virginia and received approximately 16 weeks of specialized narcotics related training. The training included controlled substances identification, narcotics related investigative techniques, interview and interrogation training, preparation of search warrants, tactical application of narcotics enforcement, surveillance and electronic monitoring techniques and money laundering investigations. I am currently assigned to the Columbus District Office in Columbus, Ohio.

3. As a DEA Special Agent, I have participated in the execution of search warrants at residences and businesses used by narcotics traffickers and have participated in numerous arrests for

drug related state and federal offenses. I have participated in investigations targeting individuals and organizations trafficking heroin, cocaine, marijuana, methamphetamine and other controlled substances as defined in 21 U.S.C. § 801. Through the course of these investigations, I have personally interviewed confidential sources and other persons involved in the distribution of illegal narcotics. I have also interviewed persons arrested for the distribution of illegal narcotics. I have spoken with more experienced narcotics investigators with whom I have worked with concerning the practices of narcotics traffickers and the best investigative methods to use when conducting investigations of narcotics trafficking organizations. Through the course of my investigations and through informal training from more experienced narcotics investigators, I have become familiar with the methods and means utilized by persons who participate in the illegal distribution of controlled substances.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. One purpose of applying for this warrant is to determine with precision the **Target Cellular Device's** location. However, there is reason to believe the **Target Cellular Device** is currently located somewhere within this district because the area code of the telephone number of the **Target Cellular Device** corresponds to the Columbus, Ohio geographical area; and subscriber information from T-Mobile on the **Target Cellular Device's** listed subscriber is 123 N. Burgess Avenue, Columbus, Ohio 43202. Pursuant to Rule 41(b)(2), law enforcement may locate the **Target Cellular Device** outside the district provided the device is within the district when the warrant is issued.

6. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, U.S.C. §§ 841(a)(1) and 846 (Distribution and Possession with Intent to Distribute a Controlled Substance, and Conspiracy to do the same) have been committed, are being committed, and will be committed by unknown persons who are trafficking methamphetamine in the Hilltop neighborhood of Columbus, Ohio. There is also probable cause to believe that the location of the **Target Cellular Device** will constitute evidence of those criminal violations, including leading to the identification of individuals who are engaged in the commission of these offenses and identifying locations where the target engages in criminal activity.

7. Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statute as well as Rule 41. See 18 U.S.C. §§ 3121-3127. This warrant therefore includes all the information required to be included in a pen register order. See 18 U.S.C. § 3123(b)(1).

## PROBABLE CAUSE

8. In spring 2020, the DEA Columbus District Office began investigating the drug trafficking activities of Donald BENNINGTON and Glenn WALKER. During this time, DEA agents interviewed a confidential source (CS) who provided information about BENNINGTON. The CS has previously provided information to law enforcement which has been corroborated through independent investigation and has led to the seizure of controlled substances and drug proceeds; as such, the CS is believed to be reliable and credible. The CS has known BENNINGTON for a number of years and has personally communicated with BENNINGTON in recent months regarding his drug trafficking activities. The CS advised that BENNINGTON was utilizing cellular telephone (614) 360-5113 to facilitate illegal narcotics transactions.

9. At the direction of DEA, the CS contacted BENNINGTON telephonically and arranged for BENNINGTON to meet with a DEA Special Agent acting in an undercover capacity (UC) who was interested in purchasing methamphetamine. On May 20, 2020, at approximately noon, the UC met with BENNINGTON in the Columbus, Ohio area and purchased approximately two ounces of methamphetamine from him. At the time of the purchase, BENNINGTON was accompanied by Glenn WALKER, however, it was WALKER who was discussing the deal and who was in possession of the narcotics. WALKER candidly bragged about his product to the UC and alluded that the narcotics came directly from Mexico. Based on earlier information from the CS about BENNINGTON, as well as the conversation held between the UC and WALKER during the undercover purchase, Investigators believe WALKER is the primary supplier of methamphetamine for Donald BENNINGTON.

10. Pursuant to an administrative subpoena, Sprint provided toll records for Donald BENNINGTON's cellular telephone which revealed that BENNINGTON was in frequent contact on the morning of May 20, 2020 with both the CS, and the cellular telephone number **(614) 957-9388**. This was during the time when BENNINGTON was trying to put together the two ounce methamphetamine transaction. This has led investigators to strongly suspect that cellular telephone **(614) 957-9388** is being utilized by BENNINGTON's primary source of supply for methamphetamine, Glenn WALKER.

11. Phone tolls reveal that on May 20, 2020, at approximately 10:07:44, BENNINGTON sent an outgoing text to **(614) 957-9388**. At approximately 10:07:56, BENNINGTON sent a second text to **(614) 957-9388**. At approximately 10:08:14, BENNINGTON called **(614) 957-9388**. At approximately 10:50:43, someone utilizing cellular telephone **(614) 957-9388** made an incoming call to BENNINGTON. At approximately 10:51:13, someone utilizing cellular telephone **(614) 957-9388** made a second incoming call to BENNINGTON. At approximately 10:53:34, someone utilizing

cellular telephone **(614) 957-9388** sent a text message to BENNINGTON. This was during the period of time that BENNINGTON was making arrangements to pick-up the two ounces of methamphetamine from his source of supply.

12. Phone tolls reveal that at approximately 10:55:13, BENNINGTON then sent a text message to **(614) 957-9388**. Following a series of phone calls and text messages between BENNINGTON and the CS, at approximately 11:08:10, BENNINGTON sent a text to **(614) 957-9388**. Between 11:20:25 and 11:41:05, toll records indicate that BENNINGTON and someone utilizing cellular telephone **(614) 957-9388** were in contact on eight different occasions, one telephone call and seven text messages. This was the period when BENNINGTON left the hotel where he was staying at in Grove City, Ohio and met WALKER on Belvidere Avenue in the Columbus neighborhood known as the Hilltop. This meeting on Belvidere Avenue would have required communication between BENNINGTON and WALKER. After linking up on Belvidere Avenue, WALKER, BENNINGTON, and a third individual left together in a maroon 2009 GMC Acadia and subsequently sold approximately two ounces of suspected methamphetamine to a DEA undercover agent.

13. Online queries of cellular number **(614) 957-9388** indicated the service provider was T-Mobile. Pursuant to an administrative subpoena, T-Mobile provided subscriber information for cellular telephone **(614) 957-9388** which indicated the subscriber was listed as Delbert MARCUM, 123 N. Burgess Avenue, Columbus, Ohio 43204.

14. Investigators believe that if they can physically locate the user of **(614) 957-9388**, and confirm that it is WALKER, and then monitor the location for a period of thirty (30) days, they can further this DEA investigation of his drug trafficking operation. In my experience, location data yields information that is relevant to a narcotics trafficking investigation. Such information includes leads relating to: (1) the location of "stash" houses where the narcotics are being stored; (2) the

5

locations of money transfer businesses and other money "stash" locations used to receive, process and launder the proceeds of the narcotics trafficking operation, and; (3) the location(s) of customers of the narcotics trafficking organization. This information is also useful in identifying the scope of the narcotics trafficking organization's operations, because it can be used to identify the geographical locations where telephone calls occur, and the scope of the travel of the different members of this drug trafficking organization.

15. Furthermore, in my experience, location data yields information that is relevant and material to narcotics trafficking investigations. Such information includes leads relating to: (1) the names of suspected suppliers, customers and other individuals who assist in the distribution of narcotics; (2) the location of "stash" houses where narcotics are stored; (3) the identity of transportation sources used by the narcotics traffickers; and (4) the locations of money transfer businesses used by members of the operation to launder proceeds of narcotics trafficking activities or through which money is exchanged with co-conspirators.

## MANNER OF EXECUTION

16. In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

17. To facilitate execution of this warrant, law enforcement may use an investigative device or devices capable of broadcasting signals that will be received by the **Target Cellular Device** or receiving signals from nearby cellular devices, including the **Target Cellular Device**. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cellular phone to communicate with others. The device may

send a signal to the **Target Cellular Device** and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the **Target Cellular Device** and use that information to determine the location of the **Target Cellular Device**, even if it is located inside a house, apartment, or other building.

18. The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the **Target Cellular Device**, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the **Target Cellular Device**, and law enforcement will limit collection of information from devices other than the **Target Cellular Device**. To the extent that any information from a cellular device other than the **Target Cellular Device** is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the **Target Cellular Device** from all other cellular devices.

## AUTHORIZATION REQUEST

19. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123.

20. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days from the end of the period of authorized surveillance. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the

**Target Cellular Device** would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

21. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the **Target Cellular Device** outside of daytime hours.

22. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

23. A search warrant may not be legally necessary to compel the investigative technique described herein. Nevertheless, I hereby submit this warrant application out of an abundance of caution.

Respectfully submitted,

*[signature]*
ZACHARY R. BENNETT
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on June 4, 2020, 2020.

*[signature]*
Kimberly A. Jolson
United States Magistrate Judge

## ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the cellular device assigned phone number **614-957-9388**, with International Mobile Subscriber Identity Number **310 260 061 715 997**, whose wireless provider is T-Mobile, and whose listed subscriber is Delbert MARCUM, 123 N. Burgess Avenue, Columbus Ohio 43204.

## ATTACHMENT B

Pursuant to an investigation of members of a drug trafficking organization for violations of Title 21, U.S.C. §§ 841(a)(1) and 846 (Distribution and Possession with Intent to Distribute a Controlled Substance, and Conspiracy to do the same), this Warrant authorizes the officers to whom it is directed to determine the location of the cellular device identified in Attachment A by collecting and examining:

1. radio signals emitted by the target cellular device for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the target cellular device in response to radio signals sent to the cellular device by the officers;

<u>for a period of thirty days, during all times of day and night</u>. This warrant does not authorize the interception of any telephone calls, text messages, other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).